## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| WELL BUILT REALTY CORPORATION, | ) ) ) Consolidated Civil No. ) 2:22-cv-573 |
| Plaintiff, | ) ) |
| v. | ) Member Case No. ) 2:22-cv-1265 |
| LEVITON MANUFACTURING CO., INC., *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Well Built owned commercial property, and leased it to Sukup.[1] A fire occurred at the property. Well Built claimed that Sukup caused the fire, so sued it for negligence. In the meantime, Well Built's insurer, Westfield, paid it about $5 million for the property damage. Sukup now moves for summary judgment, mainly arguing that Well Built doesn't have standing to sue; only Westfield does. The Court disagrees. While Westfield may be the real party in interest, Well Built can prosecute the action on Westfield's behalf. This can be accomplished through the filing of a new or amended Rule 17 ratification affidavit, which the Court will order Well Built to file. Sukup also raises a few merits-based arguments on questions of mitigation and duty; but those concern disputes of fact, and therefore cannot be fully resolved at this juncture. For these reasons, the Court denies Sukup's motion.

## BACKGROUND

Well Built owned commercial property at 360 14th Street, Ambridge PA. ECF 63-1, Joint Appendix, ¶ 3. Sukup Steel Structures leased the property from Well Built. *Id.* On July 18, 2020, a fire occurred at the property, causing extensive damage. ECF 63-1, Joint Appendix, ¶ 4. Experts in the case identified an electrical

---

[1] The Court refers to Defendant Sukup Steel Structures as "Sukup." The parties agree that Defendant Sukup Manufacturing Company should be dismissed from the case, which the Court will do by separate order.

outlet in an office space as the origination point for the fire. *Id.* at ¶ 27. An air conditioning unit was plugged into that electrical outlet at the time of the fire. *Id.* at ¶ 28. Because of the extensive damage from the fire, Well Built submitted a claim to its insurer, Westfield, and received almost $5 million from Westfield for the loss. *Id.* at ¶ 17.

At that point, Well Built had a few options. That is, under Section 10 of the lease between Well Built and Sukup, when Well Built received its insurance proceeds, it had the right to invoke the restoration obligation. That would have required Well Built to make the insurance proceeds available to Sukup, and then obligated Sukup to use those proceeds to repair or restore the property to its previous condition. *Id.* at ¶ 21. Well Built, however, did not invoke this provision. Rather than tendering the insurance proceeds to Sukup and seeking restoration, Well Built kept the insurance proceeds and later sold the property. *Id.* at ¶¶ 18, 22-25.

Based on these events, Well Built filed suit. It began this action by suing Leviton Manufacturing Co., Inc., which manufactured the outlet Well Built alleged contributed to the fire, at case number 22-cv-573. ECF 1. After filing the complaint, Well Built filed a ratification affidavit under Rule 17(a)(3) from Westfield, in which Westfield stated that it was subrogated to the losses asserted in the action, it agreed to be bound by rulings in the action, it waived any other right to pursue subrogation, and it authorized the case to be prosecuted on its behalf in Well Built's name. ECF 63-1, Joint Appendix, ¶ 26.

Next, Well Built brought suit against Sukup Manufacturing Company and Sukup Steel Structures in the Beaver County Court of Common Pleas. *Id.* at ¶ 1. Sukup timely removed the Beaver County Court of Common Pleas matter to this Court, and the action (case No. 22-cv-1265) was consolidated with Well Built's case against Leviton. *Id.* at ¶¶ 10, 12.

After fact and expert discovery concluded, Sukup moved for summary judgment.  ECF 62.  With the benefit of full briefing and oral argument, the motion is ready for disposition.  ECF 68; ECF 70; ECF 72.

## DISCUSSION & ANALYSIS

Sukup moves for summary judgment, raising three arguments—which the Court addresses, in turn.

## I.    Well Built's standing to sue.

The first argument Sukup raises goes to standing, though Sukup frames it a few different ways.  That is, Sukup argues that Well Built cannot bring a claim here because Well Built was made whole by insurance and that this action is really a subrogation claim that could be brought only by Westfield.  Relatedly, Sukup says that Well Built has no "damages" since it received full compensation from its insurer.  On careful review, the Court disagrees.

Initially, even if Well Built received an insurance payout from Westfield, it can still recover its full amount of damages from Sukup under the collateral source rule.  In Pennsylvania, "[t]he collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer."  *Johnson v. Beane*, 664 A.2d 96, 100 (Pa. 1995).  The collateral source rule allows a plaintiff to collect its full damages from a tortfeasor even if the plaintiff has received money from an insurance settlement.  *See Chavers v. 1605 Valley Ctr. Pky, LP*, 294 A.3d 487, 495 (Pa. Super Ct. 2023) (discussing collateral source rule in worker's compensation context).

What this means in the context of this case is that Well Built can still recover, but that Westfield would lien any recovery against its insurance settlement.  To avoid the (unlikely) situation, of Westfield dropping the ball and not liening any recovery, federal law authorizes Westfield to file something that would require it to either join the case, be substituted in, or ratify Well Built's action.  *See* Fed. R. Civ. P. 17.

Westfield already did so in the No. 22-cv-573 case, and at oral argument, Well Built's counsel indicated that plaintiffs often file ratification affidavits to assuage the concerns of defendants, and appeared open to filing another one.  ECF 72, 35:16-36:5.  The Court therefore will order Well Built's counsel to file a second Rule 17 ratification by Westfield that applies specifically to the No. 22-cv-1265 case, which will moot the issue.

Sukup, though, says, "not so fast."  It argues that it is too late to file the Rule 17 ratification.  But it's not.  To begin with, failure to file a timely Rule 17 ratification does not require dismissal.  Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.").  There is no statute-of-limitations issue with a late Rule 17 ratification, since Rule 17 has a "relation back" provision, which states that after "ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."  Fed. R. Civ. P. 17(a)(3).  "[T]his mandatory relation-back provision protects the real party in interest from an expired statute of limitations as long as the named plaintiff filed within the limitations period."  *Green v. Daimler Benz, AG*, 157 F.R.D. 340, 344 (E.D. Pa. 1994).  And Sukup can't otherwise credibly claim any prejudice.  After all, when the cases were consolidated, Sukup gained access to all the pleadings in the No. 22-cv-573 case and thus knew a ratification affidavit had been filed.  Because Sukup knew of Westfield's interest all along, it will not be prejudiced by a second ratification affidavit.[2]

---

[2] Indeed, this issue only likely arose because of Sukup's removal of the No. 22-cv-1265 case to federal court.  When an action that involves subrogation is filed in state court and then removed to federal court, a circumstance can arise where the real party at interest, the insurance company, is not properly joined or ratified to the action.  *See Green v. Daimler Benz, AG*, 157 F.R.D. 340, 342 (E.D. Pa. 1994).  This is because under the Pennsylvania Rules of Civil Procedure, insurance companies may bring subrogation actions "in the name of the insured even if the insured has no interest in

In sum, Well Built has standing to sue Sukup. While Westfield may have subrogation rights to the claim or aspects of the claim, a Rule 17 affidavit will ensure that Well Built can be properly considered the real party in interest.[3]

## II.    Failure to mitigate.

Sukup next argues that Well Built is precluded from recovery because it failed to mitigate its damages under the lease. ECF 63, p. 10. Sukup argues that the lease required Well Built to tender the insurance proceeds to Sukup, so that Sukup could then repair the building. This argument fails for two reasons.

First, Sukup misreads the lease; the restoration provision is not mandatory under the lease. The lease provides:

> 10. Restoration. If all or any part of the Premises is damaged or destroyed at any time during the Term of this Lease, then Tenant shall not be entitled to surrender possession of the Premises nor shall Tenant's liability to pay Rent under this Lease cease. In case of any such damage or destruction, Tenant *shall repair or restore* the Premises to a condition similar to its previous condition with all reasonable speed, *provided that Landlord makes insurance proceeds available for such purpose* to the extent that Landlord is required to carry insurance for such casualty. If all or any part of the Premises is damaged or destroyed, the Tenant shall immediately notify Landlord thereof.

---

the suit." *Id.* But Federal Rule of Civil Procedure 17 requires that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "It is settled law that an insurer, whether it has paid all of the loss or only part of the loss, is a real party in interest under Rule 17(a)." *Hancotte v. Sears, Roebuck & Co.*, 93 F.R.D. 845, 846 (E.D. Pa. 1982). Based on this principle, Westfield qualifies as a real party in interest. All of this is to say that it is understandable why a Rule 17 affidavit of some sort wasn't filed with the original complaint.

[3] To be clear, because Well Built is asserting a negligence claim under Pennsylvania law, it may present evidence of damages under the Pennsylvania standard for such claims—it is not limited to the amount it received in the insurance settlement. *See Vitale v. Electrolux Home Prods., Inc.*, No. 15-1815, 2018 WL 3868671, at *3 (E.D. Pa. Aug. 14, 2018) (holding that evidence of calculation of damages was trial issue). In other words, Well Built can still pursue damages that might exceed what Westfield paid and for which Westfield has subrogation rights.

ECF 63-2, p. 74, Lease Section 10 (emphasis added). The italicized language makes clear that Sukup only had a duty to repair the property *if* Well Built provided it with the insurance proceeds. *See id.* Well Built never did so. The consequence of this is that Sukup then had no obligation to restore the property. Importantly, though, nothing in this section of the lease required Well Built to provide the insurance proceeds to Sukup and to exercise what is essentially a restoration option. And if the parties had intended such a requirement, they certainly could have said as much in their agreement.

Second, to the extent that Sukup is making a mitigation argument separate from this lease language, that issue is for trial. Failure to mitigate is an affirmative defense on which the defendant bears the burden of proof at trial. *Michalek v. Nationwide Mut. Fire Ins. Co.*, 597 F. Supp. 3d 822, 829 (W.D. Pa. 2022) (Conti, J.), *reconsideration denied*, No. 19-351, 2022 WL 1782503 (W.D. Pa. June 1, 2022). "[T]o prove a failure to mitigate, a defendant must establish: (1) reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." *Id.* (cleaned up). At summary judgment, Sukup must "show that based upon the undisputed facts of evidence, a reasonable jury could find only in its favor." *Id.* Failure to mitigate can be a "fact-intensive inquiry" that cannot be resolved at summary judgment. *Id.*; *see also In re Rowland*, 292 B.R. 815, 820 (Bankr. E.D. Pa. 2003) ("The question of how much, if any, a plaintiff's recovery should be reduced due to a failure to mitigate, like the applicable question of the reasonableness of a plaintiff's behavior in the face of the breach, is one of fact."). Sukup has not presented undisputed facts sufficient to defeat this affirmative defense at summary judgment.[4]

---

[4] Sukup points to the lease provision requiring it to rebuild the property if Well Built provided the insurance funds for that purpose, but doesn't otherwise cite to facts of record that would be sufficient to indisputably establish this affirmative defense at this stage.

Because the lease provision is not mandatory and failure to mitigate is otherwise a question of fact, summary judgment is not appropriate on this issue.

**III.    Duty to maintain HVAC system.**

Finally, Sukup argues that it is not liable because Well Built had an independent duty to maintain the HVAC system under the lease.   ECF 63, p. 12. Sukup states that if Well Built's claim is that the fire was caused by Sukup's failure to properly maintain the air conditioner at the property, then Sukup does not owe a duty of care and did not breach any duty.   *Id.*

This is just a factual argument about the cause of the fire.   Under the lease, Sukup was required to maintain the electrical systems and Well Built was required to maintain the HVAC system in the office portion of the building.   ECF 63-2, pp. 72-73, Lease Section 8.   The parties' experts identified an electrical outlet as the origination point for the fire.   ECF 63-1, Joint Appendix ¶ 27.   An air conditioning unit was plugged into that electrical outlet at the time of the fire.   *Id.* at ¶ 28.   Well Built points to the outlet as the cause of the fire, while Sukup points to the air conditioner.

Whether the electrical outlet or the air conditioner that was plugged into the outlet were the cause of the fire is a disputed factual issue.   Well Built has presented evidence that the cord on the air conditioner was damaged, and when Sukup plugged in the bad cord, the outlet was damaged.   ECF 72, 44:20-45:5; ECF 63-1, Joint Appendix, ¶ 28 ("The only connection that such electrical outlet had to any HVAC aspects of the building is that the power cord for an air conditioning unit cooling [an] office was plugged into such outlet at the time of the fire."); ECF 66, p. 15 (Well Built's claim is that the fire was caused by Sukup's "workers' abuse of an electrical outlet"); ECF 67, p. 10 ("Further, it was the condition of that air conditioner, the short cord which allegedly put a strain on the outlet, which their expert says caused the fire.").

That is enough to create a genuine dispute of fact about the exact cause of the fire remain, making summary judgment inappropriate.

*    *    *

Therefore, after careful consideration, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (ECF 62) is **DENIED.**  In accordance with the above, Well Built is **ORDERED** to file a new or amended ratification affidavit from Westfield on or before February 7, 2025.

Date: January 24, 2025                    BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge
